IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIFFINEY JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:19-CV-2361-N |
| | ) | |
| THE CMI GROUP and A-Z CALL CENTER SERVICES | ) ) | |
| | ) | |
| Defendants. | ) | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS**

Before the Court is *Defendants The CMI Group and A-Z Call Center Services' Motion to Compel Arbitration, Motion to Dismiss, or Alternatively, Motion to Abate*, filed March 18, 2020 (doc. 21). Based on the relevant findings and the applicable law, the motions to compel arbitration and to dismiss should be **GRANTED**, and the case should be dismissed without prejudice.

**I.  BACKGROUND**

Tiffiney Johnson (Plaintiff) sues The CMI Group, Inc. (CMI) and A-Z Call Center Services (A-Z) (collectively Defendants) under Title VII of the Civil Rights Act of 1964 (Title VII) and Title I of the Americans with Disabilities Act (ADA), alleging employment discrimination, harassment, and retaliation. (doc. 3 at 2; doc. 21 at 1.)[2]

After she was hired on November 9, 2015, Plaintiff worked for CMI as a customer service representative for two and one-half years. (docs. 3 at 4; 21-2 at 2, 4.)  She alleges that over the course of her employment, her immediate supervisor harassed her about a perceived mental

---

[1] By *Special Order No. 3-251*, this *pro se* case has been automatically referred for full case management.

[2] Citations refer to the cm/ecf system page number at the top of each page rather than the page numbers at the bottom of each filing.

impairment, created a hostile work environment, and caused her severe emotional distress, which resulted in a stroke. (doc 3 at 3-4.) She also claims that after she reported the harassment, Defendants retaliated by demoting her, reducing her pay, and eventually forcing her to resign on May 22, 2018. (*Id*. at 4-5.) Plaintiff filed a charge of discrimination with the Texas Workforce Commission on November 30, 2018, which referred it to the Equal Employment Opportunity Commission (EEOC). (*Id*. at 2.) After receiving a "Notice of Right to Sue" on July 8, 2019, she filed this action on October 4, 2019. (*Id*. at 1, 3.)

At the time she was hired in 2015, Plaintiff signed a "Mutual Agreement to Arbitrate" (Agreement), which states, in relevant part:

> This Mutual Agreement to Arbitrate ("Agreement") is for the purpose of resolving claims by arbitration and is mutually binding upon both me and my employer **The CMI Group, Inc.** (hereinafter referred to as "Company") and any other entity owned, controlled, or managed by the Company. The following contains the terms and conditions of the binding Agreement which I agree to entirely.
>
> **Introduction:**
> I agree to arbitrate and resolve any and all employment-related disputes between the Company and affiliate entities and myself. . . . I understand that the purpose of this Agreement is to provide both the Company and myself a way in which claims or disputes may be resolved by binding arbitration rather than litigation ….
>
> ***
>
> For purposes of this Agreement, an employment dispute includes, but is not limited to, ***all disputes***, including statutory and common law claims, whether under state, federal, or local law, including, but not limited to . . . constructive discharge, wrongful discharge, . . . claims arising from work-related activities, unsafe workplace, unlawful discrimination, retaliation or harassment, sexual harassment, violations of Title VII of the Civil Rights Act of 1964, as amended, Age Discrimination in Employment Act (ADEA), Americans with Disabilities Act (ADA), . . . . I acknowledge that any employment dispute directly or indirectly affecting my Company shall be subject to binding arbitration, including disputes against supervisors and managers that involve my employment.
>
> ***
>
> I also acknowledge that this Agreement applies to all employment disputes, regardless of

2

> when it arises, including disputes that arise or asserted after I leave the Company. Furthermore, I understand that this Agreement applies to any dispute that occurred before or after I sign this Agreement.

(doc. 21-1 at 2 (emphasis original).)

Defendants move to compel arbitration and to dismiss this action, or in the alternative, to abate it pending the outcome of arbitration. (doc. 21.) Plaintiff responds that she is unopposed to arbitration with both defendants, but opposes dismissal on grounds that CMI was the only party to the Agreement, and that she "may have allegations and causes of action that are not rooted in the terms and conditions of the Agreement." (doc. 23 at 1-3.)

## II. MOTION TO COMPEL ARBITRATION

Defendants move to compel arbitration based on the Agreement, which requires arbitration of any dispute arising out of Plaintiff's employment. (doc. 21-1 at 2).

The Federal Arbitration Act (FAA) provides that "a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) (quoting 9 U.S.C. § 2). It "embodies the national policy favoring arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). The FAA provides "for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citing 9 U.S.C. §§ 3-4). A court may not compel arbitration under the FAA until it is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C § 4.

Courts in the Fifth Circuit employ a two-step inquiry when determining a motion to compel

3

arbitration under the FAA. *See Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). The first step is to determine whether the parties agreed to arbitrate the dispute at issue. *Webb v. Investacorp., Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam). The second step is to determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005) (quoting *Webb*, 89 F.3d at 258); *accord OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445-46 (5th Cir. 2001) (per curiam) (citing *Mitsubishi*, 473 U.S. at 628). "Only if the court finds there is an agreement to arbitrate does it consider the second step of whether any legal constraints render the claims nonarbitrable." *Edwards v. Conn Appliances, Inc.*, No. 3:14-CV-3529-K, 2015 WL 1893107, at *2 (N.D. Tex. Apr. 24, 2015) (citing *Webb*, 89 F.3d at 258).

In determining whether the parties agreed to arbitrate the dispute at issue, courts must consider "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Safer*, 422 F.3d at 294 (citations omitted); *accord Webb*, 89 F.3d at 258. In light of the strong federal policy favoring arbitration, "the Supreme Court has held that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Safer*, 422 F.3d at 294 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). This presumption "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties,'" however. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (quoting *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)).

4

A.       **Applicable Standard**

This court has previously noted that "[w]hile the two-step inquiry used to consider a motion to compel arbitration under the FAA is well-settled," the United States Court of Appeals for the Fifth Circuit does not appear to have specifically addressed the applicable standard for considering a motion to stay or compel arbitration. *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 443 (N.D. Tex. 2019) (quoting *Rain CII Carbon, LLC v. ConocoPhillips Co.*, No. CIVA 09-4169, 2010 WL 148292, at *3 (E.D. La. Jan. 11, 2010), and citing *Grant v. House of Blues New Orleans Restaurant Corp.*, No. CIV.A. 10-3161, 2011 WL 1596207, at *2 (E.D. La. Apr. 27, 2011)). *Jackson* noted that "'[t]he majority of other circuits apply a summary judgment-like standard, giving deference to the claims of the non-movant.'" *Id.* (quoting *Rain CII Carbon*, 2010 WL 148292, at *3 (citing *Clutts v. Dillard's, Inc.*, 484 F. Supp.2d 1222, 1224 (D. Kan. 2007)), and citing *Grant*, 2011 WL 1596207, at *2-4 (collecting cases using summary judgment standard on motion to compel arbitration).[3] District courts in this circuit have also considered motions to compel arbitration under the summary judgment standard. *See id.*; *see also Neukranz v. Conestoga Settlement Serv., LLC*, No. 3:19-CV-1681-L-BH, 2020 WL 5415526, at *4 (N.D. Tex. Jan. 22, 2020) (citing *Jackson*), *rec.*

---

[3]*See, e.g., BOSC, Inc. v. Board of County Commissioners of County of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017) (citing *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012) (applying the similar framework of "summary judgment practice" when considering a motion to compel arbitration)); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe–Riat,* 316 F.3d 171, 175 (2d Cir. 2003) (explaining that courts deciding motions to compel apply a "standard similar to that applicable for a motion for summary judgment")); *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 774 (3d Cir. 2013) (explaining that where "the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question in issue," the Rule 56 summary judgment standard applies); *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008) (citing *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n. 9 (3d Cir.1980) (applying "summary judgment standard in deciding what is sufficient evidence to require a trial on the issue of whether there was an agreement to arbitrate")); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (applying the standard required of a party opposing summary judgment under Rule 56 to the evidentiary standard a party seeking to avoid compelled arbitration must meet); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1141 (9th Cir. 1991) ("Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement[, and the court] should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.").

*adopted as supplemented,* 2020 WL 2764204 (N.D. Tex. May 28, 2020); *Price v. Santander Consumer USA Inc.*, No. 3:19-CV-0742-B, 2019 WL 4318883, at *1 (N.D. Tex. Sept. 12, 2019) (citing *Galitski v. Samsung Telecomm. Am., LLC*, No. 3:12-CV-4782-D, 2013 WL 6330645, at *1 n.1 (N.D. Tex. Dec. 5, 2013)); *Rocha v. Macy's Retail Holdings, Inc.*, No. EP-17-CV-73-PRM, 2017 WL 4399575, at *2 (W.D. Tex. Oct. 3, 2017); *Rain CII Carbon*, 2010 WL 148292, at *3.[4] This summary judgment standard is likewise applied in this case.

Under the well-settled standard, summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). The moving party can also meet its summary judgment

---

[4]"The courts that use the summary judgment standard of Fed.R.Civ.P. 56 have found it appropriate 'because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'" *Grant*, 2011 WL 1596207, at *3 (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 528, 532 (3rd Cir. 2009) (quotation omitted)) (citations omitted); *see* 9 U.S.C. § 4 (a district court should not order arbitration unless it is "satisfied that the making of arbitration agreement ... is not in issue").

6

burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325 (internal quotation omitted). There is "no genuine issue as to any material fact [where] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S. at 324. It must go beyond its pleadings and designate specific facts to show the existence of a genuine issue for trial. *Id.*; *Anderson*, 477 U.S. at 249.[5] While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

When considering a motion to compel arbitration under this summary judgment framework, the moving party must first "present evidence sufficient to demonstrate an enforceable agreement to arbitrate." *Clutts*, 484 F. Supp. 2d at 1224 (citing *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)). "This burden does not require the moving party to show initially that the agreement would be *enforceable*, merely that one existed." *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (emphasis in original). Once this burden has been met by the movant, the burden shifts to the non-movant to raise a genuine dispute of material fact regarding the

---

[5] "The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)).

existence of an agreement to arbitrate. *See Hancock,* 701 F.3d at 1261. "Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *See Tinder*, 305 F.3d at 735. "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 106 (3d Cir. 2000) (quoting *Par–Knit*, 636 F.2d at 54)).

**B.** <u>**Agreement**</u>

As noted, a district court must first determine whether a valid arbitration agreement exists between *all* the parties being compelled to arbitration. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d at 753. This requires consideration of "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Safer*, 422 F.3d at 294 (citations omitted). Courts should generally apply "ordinary state-law principles that govern the formation of contracts," but must give due regard to the federal policy favoring arbitration and resolve any ambiguities as to the scope of the arbitration clause itself in favor of arbitration. *Webb*, 89 F.3d at 258 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Under Texas law,[6] a party who seeks to compel arbitration has the initial burden to establish the existence of an arbitration agreement and to show that the asserted claims fall within its scope. *See In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (per curiam), *abrogated in part by In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002); *Wachovia Sec., LLC v. Emery*, 186

---

[6]Although the Agreement does not specifically state that Texas law applies, Defendants cite Texas law. (doc. 21 at 6-7.) Plaintiff does not dispute that Texas law applies.

S.W.3d 107, 113 (Tex.App.–Houston [1st Dist.] 2006, no pet.). The burden then shifts to the party opposing arbitration to present evidence showing why the arbitration agreement should not be enforced. *Wachovia Sec.*, 186 S.W.3d at 113. The party opposing arbitration may show, for example, that the arbitration agreement was procured in an unconscionable manner, or induced or procured by fraud or duress. *See In re Oakwood*, 987 S.W.2d at 573.

    Here, Defendants presented the Agreement to arbitrate signed by Plaintiff on November 9, 2015. (doc. 21-1 at 2, 4.) In the Agreement, she acknowledges that its purpose is the resolution of claims by arbitration, and it is mutually binding upon "both [her], [her] employer The CMI Group, Inc. . . . and any other entity owned, controlled, or managed by the Company." (*See id.* at 2.) The Agreement extends to "any and all employment-related disputes," expressly including claims for unlawful discrimination, retaliation and harassment and violations of the ADA and Title VII. (*See id.*) Plaintiff's complaint asserts claims for discrimination, harassment and retaliation in violation of both the ADA and Title VII, arising from alleged conduct by her immediate supervisor, against her employer, CMI, and A-Z. (*See* doc. 3.) Defendants have met their initial burden to showing that there was an agreement to arbitrate, and that Plaintiff's claims relating to her employment fall within its scope. *See Oakwood*, 987 S.W.2d at 573; *Wachovia Sec.*, 186 S.W.3d at 113.

    The burden now shifts to Plaintiff to show why the agreement should not be enforced. *See, e.g., Tanoury v. Symphony Serv. Corp.*, No. 3:12-CV-1142-L, 2013 WL 705121, at *4 (N.D. Tex. Feb. 5, 2013), *adopted by* 2013 WL 706048 (N.D. Tex. Feb. 27, 2013). In response, she does not dispute that she agreed to arbitrate any dispute arising from her employment or contend that the Agreement should not be enforced. (doc. 23 at 1, 3.) Although she states that "Defendants seek to enforce the Arbitration provision of the Agreement at issue when Defendant, The CMI Group, Inc.

9

was the only party to the Agreement," and that "[a] determination of fact is required as it relates to A-Z Call Centers Services, 'being an entity owned, controlled or managed by [CMI]' at the time of execution of the Agreement," she agrees that under "either scenario, the result is the same, that being that the dispute should be arbitrated" under the terms of the Agreement that apply. (*See id.* at 1-2.)[7]

## C.  Legal Restraints

The next step is to determine whether any legal restraints external to the agreement foreclose arbitration of the claims at issue here. *See OPE Int'l LP*, 258 F.3d at 445-46.  Plaintiff does not argue that any external legal constraints exist. (*See* doc. 23.)  Since no legal restraints external to the Agreement foreclose arbitration of Plaintiff's claims, she should be compelled to submit her claims against both defendants to arbitration. *See, e.g., Tanoury*, 2013 WL 705121, at *5.

## III.  MOTION TO DISMISS/STAY THE SUIT

Defendants move to dismiss the suit on grounds that all of Plaintiff's claims are arbitrable or, alternatively, to stay the proceedings pending arbitration. (doc. 21 at 1.) Plaintiff opposes the motion to dismiss the suit on grounds that she may have allegations and causes of action that are not rooted in terms and the conditions of the agreement. (doc. 23 at 2.)

Under § 3 of the FAA, a court must stay the trial of the action until arbitration is complete if it determines that the claims are properly referable to arbitration and one of the parties applies for a stay of the proceedings. 9 U.S.C. § 3; *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992). A stay is mandatory upon a showing that the opposing party has commenced suit

---

[7]Because Defendants seek to compel arbitration of Plaintiff's claims against both of them, they bear the burden to demonstrate the Agreement's applicability to both.  *See Neukranz*, 2020 WL 5415526, at *8.  Although their motion contends that A-Z "is one of CMI's operating subsidiaries," they presented no actual evidence in support of this statement to meet their burden.  (*See* doc. 21 at 2.)  Nevertheless, it is undisputed that all of Plaintiff's claims arise out of her employment and are therefore arbitrable under the Agreement, and she expressly agrees that the dispute should be arbitrated as both defendants under its terms.  (*See* doc. 23 at 1-2.)

10

"upon any issue referable to arbitration under an agreement in writing for such arbitration." *Id.*; *accord Mun. Energy Agency of Miss. v. Big Rivers Elec. Corp.*, 804 F.2d 338, 342 (5th Cir. 1986). When all of the issues before the Court are arbitrable and there are no other reasons to retain jurisdiction over the suit, it may dismiss the action. *See Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 678 (5th Cir. 1999) (noting the Fifth Circuit has "interpreted [9 U.S.C. § 3] to mean only that the district court cannot deny a stay when one is properly requested") (citing *Alford*).

Here, Plaintiff opposes dismissal because she "may have allegations and causes of action that are not rooted in the terms and conditions of the Agreement." (doc. 23 at 1-3.) It is undisputed that all of her live claims of employment discrimination, harassment, and retaliation in violation of the ADA and Title VII arise out of her employment and therefore fall within the scope of the Agreement. Accordingly, they must be submitted to arbitration, the Court should dismiss the suit without prejudice.

### IV. RECOMMENDATION

The motion to compel arbitration should be **GRANTED,** and the case should be **DISMISSED without prejudice.**

**SO RECOMMENDED** on this 29th day of December, 2020.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

11

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE
